## URIARTE et al. v. UNITED STATES.

(District Court, E. D. New York. June 21, 1926.)

No. 5010.

1. Seamen ⊂⊃13—Where period for which seamen signed expired before vessel reached United States port, without fault of vessel, master, or owner, seamen were bound to continue services until vessel reached appropriate discharge port, and, having refused, were not entitled to return transportation, wages, of maintenance after leaving ship.

Where period for which seamen signed articles expired before vessel returned to United States port, but delay was not due to unseaworthiness of vessel or fault of master or owner, seamen were bound to continue services until vessel reached appropriate final port of discharge and having refused to sign new articles for three months or to agree to extension of existing articles until arrival in United States, they were not entitled to return transportation, maintenance, or wages after leaving ship.

2. Seamen ⊂⊃26.

In seamen's libel for wages, maintenance, and return expenses, consul's decision of dispute as to rights under shipping articles should not be disturbed, in absence of showing that it is contrary to law.

In Admiralty. Libel by Anastasio Uriarte and others against the United States of America. Libel dismissed.

Stephen Crick, of New York City, for libelants.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y., and E. H. Mead, of New York City, for the United States.

CAMPBELL, District Judge. The eleven libelants signed shipping articles on January 6, 1920, at the port of Newport News, Va., on the steamship Firthcliffe, for a voyage not to exceed twelve months, to one or more ports on the west coast of South America, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States.

The steamship Firthcliffe proceeded to ports in Balboa, Chile, Honolulu, Calcutta,

Japan, and other ports, receiving and unloading cargo, and finally arrived at the port of Cork, Ireland, with a cargo of wheat from Australia, on December 19, 1921.

The discharge of the cargo was completed on January 5, 1922. On that day the one-year period mentioned in the articles expired. On January 4, 1922, libelants demanded to be sent home on the completion of the year, and the master communicated with the home office and next day went with libelants to the consul's office.

Libelants were asked to sign articles for three months, via Brest, for oil fuel and ballast to the United States. The libelants refused, and were given another chance under the extension of the old articles communicated to them by the consul by virtue of the instructions contained in the telegrams attached to the articles, but again the men refused, and on the 7th day of January, 1922, on the refusal of the libelants, the master ordered them from the ship so he could fill their places and proceed with the voyage, as he could not proceed without the libelants, or, on their refusal to sail, without filling their places.

The proposals made to the libelants by the master were for the purpose of getting them to an American port, and was so explained to them.

There was a shortage of oil fuel at the time, and it was very doubtful that a sufficient supply could be obtained without going to Brest.

The vessel left Cork, light, on January 8, 1922, and sailed to Liverpool for ballast and fuel, from which she sailed on January 15, 1922, for the United States, arriving at Baltimore on February 2, 1922.

The libelants signed off under protest and received wages to January 6, 1922, but return transportation was not allowed.

Libelants returned to the United States, and now ask for eleven days' maintenance in a hotel at Cork, the costs of transportation on the Cunard Line, which were paid from their money at the consul's office, and one month's wages.

The libelants, after their arrival in the United States, were paid for the overtime due them, for which they signed before the shipping commissioner at New York, without waiving their protest.

There is some conflict in the testimony but principally about the purpose of the call at Brest, but the foregoing are the facts as I find them from the testimony.

I am convinced that there was no provision for the taking of cargo at Brest, as contended by the libelants, but that the whole plan of the proposed new articles was to get the crew back to the United States, and that the libelants were so informed, but that they elected to stand on their supposed legal rights, and demanded discharge and transportation on the expiration of the twelve months' period named in the articles.

[1] There is no allegation in the libel, and there was no testimony to show that the failure of the vessel to reach a port in the United States within the twelve months was due to any unseaworthiness, or fault of the master or owner, and the third assistant engineer testified that the failure of the vessel to reach a port in the United States within the twelve months' period was not due to any of those causes. It therefore appears that the master of the ship was guilty of no breach of contract in endeavoring to make the arrangement with the crew.

The libelants, on the contrary, were bound under the circumstances to continue their service until the vessel reached the appropriate final port of discharge, and they were offered the choice of two methods, either the signing of new articles for three months, or the extension of the existing articles until the arrival of the vessel in the United States. Hamilton v. United States (C. C. A.) 268 F. 15, certiorari denied 254 U. S. 645, 41 S. Ct. 15, 65 L. Ed. 454; Shanley v. United States (C. C. A.) 294 F. 502, 505.

[2] The libelants and master were before the consul, and the question at issue was thoroughly discussed, and it does not seem to me that the consul's decision should be disturbed, unless it be shown that his action was contrary to law.

No such showing is made; on the contrary, he seems to have acted in accordance with law, while the libelants stood on what they erroneously supposed were their technical legal rights, and the consul's ruling should be upheld. The T. F. Oakes (C. C.) 36 F. 442, 448.

A decree may be entered dismissing the libel, without costs.